IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELANIE LYNN MILLER,<br>  Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, *Commissioner of Social Security*,<br>  Defendant. | Civil Action No. 13-1383<br><br>Judge David Stewart Cercone/<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 12, 14 |

## **REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

Plaintiff Melanie Lynn Miller ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") disallowing her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.

Presently before the Court are cross-motions for summary judgment submitted by the parties. For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Plaintiff, ECF No. 12, be denied, the Motion for Summary Judgment filed by Defendant, ECF No. 14, be granted, and the decision of the Commissioner denying Plaintiff's application for DIB be affirmed.

**II.  REPORT**

**A.  Procedural History**

Plaintiff protectively filed an application for benefits on September 28, 2010, claiming an onset of disability of January 2, 2010 (Tr. 131-33).[1] The Social Security Administration denied her claim on December 10, 2010, and on January 10, 2011, Plaintiff requested a hearing before

---

[1] The Certified Copy of the Transcript of the proceedings is docketed at ECF No. 8.

an administrative law judge ("ALJ") (Tr. 70-73, 77-78).

A hearing was held on November 1, 2011, at which time Plaintiff, who was represented by counsel (Tr. 38), and Mark Heckman, a vocational expert ("VE"), were called to testify (Tr. 36-67). The ALJ issued a decision on January 31, 2012 (Tr. 18-34), finding that, although Plaintiff is unable to perform any past relevant work, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and thus is not disabled as defined under the Act (Tr. 29, 30). Plaintiff filed a request for review with the Appeals Council on March 12, 2012. The request was denied on July 30, 2013 (Tr. 1-5, 16), thus rendering the ALJ's decision the final decision of the Commissioner.

### B. Hearing Testimony

At the administrative hearing, Plaintiff testified that she was born on March 6, 1979, and thus was thirty-two years old at the time of the hearing (Tr. 43, 131). Plaintiff also testified that she was single, had no children, lived alone in an apartment and was receiving welfare (Tr. 42-43). Plaintiff allowed that she did not have a driver's license and was dependent upon her mother and her boyfriend to "get around" (Tr. 43). Plaintiff completed high school (Tr. 43, 148), and previously worked as a nurse's aide, a cashier and at a fast food restaurant (Tr. 44-45). Plaintiff has not worked since January 2, 2010, claiming that she has trouble concentrating, completing tasks, getting along with co-workers and that she cannot handle the everyday stress of working (Tr. 42, 46).

Plaintiff testified that she first sought mental health treatment in August of 2010 -- seven months after she stopped working -- and sees a therapist at Southwestern Pennsylvania Health Services ("SPHS") Behavioral Health once a month for therapy and medication checks which she takes for depression and sleep (Tr. 46-48). It also appears that a caseworker from

2

Westmoreland Case Management comes to Plaintiff's home twice a month and helps her with a budget, talks about Plaintiff's goals with her and takes her shopping. The case worker also assisted Plaintiff in filling out her application for social security benefits (Tr. 48-49). Plaintiff was unable to state whether or not any of her doctors had placed any restrictions on her work activity (Tr. 46).

Plaintiff also testified that there is nothing physically wrong with her and that she has no physical symptoms (Tr. 49). Plaintiff, however, stated that she has problems with memory and cannot remember what she has done from day to day. She did allow, however, that she writes things down on a calendar so she does not forget to do something (Tr. 50). Plaintiff also stated that she has problems with maintaining attention and concentration and, at times, does not comprehend what is going on when she's watching a television show and sometimes forgets that she has put clothes in the washer or dryer (Tr. 50-51).

In addition, Plaintiff testified that she sometimes has trouble understanding instructions, that she had trouble completing all of her assigned tasks while working as a nurse's aide, and that she has problems making decisions such as deciding whether she should take the apartment she lives in (Tr. 51). Plaintiff allowed that she generally gets along with people but has trouble getting along with co-workers citing to one particular incident at the Latrobe Care Center when a co-worker "sort of made [her] upset" by telling Plaintiff what to do and acting like she was Plaintiff's boss (Tr. 52-53). Plaintiff indicated, however, that she has no trouble getting along with her supervisors or bosses (Tr. 53). She also testified that her difficulty completing tasks in her past jobs frequently caused co-workers and/or supervisors to tell her that she was not keeping up and that, rather than say anything to them, she would go home and cry about it (Tr. 61).

Although it is unclear for how long, it appears that Plaintiff had moved in with her aunt

for a period of time in order to take of her which included helping her aunt prepare meals, get to and from the bathroom and shower (Tr. 54).

Plaintiff testified that post-traumatic stress disorder ("PTSD") is a major problem of hers and that it affects everything when she is working (Tr. 53-55). Plaintiff, however, was unsure who had diagnosed her with PTSD or when she had been so diagnosed (Tr. 54-55).

Plaintiff indicated that a typical day begins between 11:00 a.m. and 11:30 a.m.; that she gets up and showers; that she spends the day on Facebook and watching reality shows on TV; that she makes herself dinner; that she tries to go see her boyfriend, who lives upstairs from her, for a couple of hours every day; and that she goes to bed around 1:00 a.m. (Tr. 56). Plaintiff stated that she has no problem taking care of her self-care items such as bathing, washing, and dressing herself; that she cleans her apartment, including vacuuming and sweeping; does the dishes and the laundry; pays the bills; and goes grocery shopping (Tr. 57). Plaintiff also visits a friend, who lives on the second floor of her apartment building, as well as her mom and step-dad, and goes to the movies four times a month with a group of women in the "Ace Program" (Tr. 58). Plaintiff volunteers at the American Association for Lost Children selling knickknacks two or three hours twice a week. They also go to different festivals during the summer where they set up tents and sponsor 5K runs (Tr. 59, 60, 62). Plaintiff testified that she does not belong to any clubs, does not own any pets and does not go to any sporting events or for walks although she does go to the mall sometimes with her Ace Program case manager (Tr. 59). Plaintiff likes to read, access Facebook on the computer, do "pressure puzzles" and collects "Tweety Bird stuff" (Tr. 60).

A VE was also called to testify at the hearing and categorized Plaintiff's past work as a nursing assistant as medium in exertion and semi-skilled allowing that, "as customarily

4

performed, it's heavy" (Tr. 63). He categorized Plaintiff's past jobs as a cashier and as a fast food worker as light in exertion and unskilled (Tr. 63). In response to a hypothetical question involving an individual of Plaintiff's age, education and past jobs, that is able to work at all exertional levels but is limited to simple, routine, repetitive tasks with only occasional interaction with the public, only occasional changes in the work setting and no production rate pace, the VE testified that such an individual could not perform any of Plaintiff's past jobs but could perform work such as a stock clerk, a private household cleaner and a janitor, all of which are medium in exertion and unskilled (Tr. 63-64). The VE also testified that all of these positions exist in significant numbers in the national economy (Tr. 64), and that these positions would still be applicable with the additional limitation of having only occasional interaction with co-workers (Tr. 65). In response to questioning by Plaintiff's counsel, the VE allowed that if the individual would not be able to be on job task 90 percent of the workday, or 54 minutes out of an hour, there would be no positions that he or she could perform (Tr. 65-66).

C.      **The ALJ's Decision**

Using the five-step process to determine disability eligibility, see 20 C.F.R. §§ 404.1520(a),[2] the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 2, 2010, the alleged onset date, and that Plaintiff suffered from borderline intellectual functioning, depressive disorder and borderline personality disorder which he categorized as severe (Tr. 23). The ALJ noted that Plaintiff may also suffer from a mild case of PTSD, which he found to be a non-severe impairment as Plaintiff's most recent treatment

---

[2] The five-step sequential evaluation process for disability claims requires the Commissioner to consider whether a claimant has met her burden of demonstrating that he or she: (1) is not working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; and (4) cannot return to his past relevant work. If so, then the burden shifts to the Commissioner at the fifth step of the evaluation process to demonstrate that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a).

5

records indicate that her physicians "ruled out" PTSD and that Plaintiff's symptoms, to the extent they are consistent with the other objective medical evidence and opinion evidence, indicate that it does not significantly limit Plaintiff's ability to perform basic work activities (Tr. 23). The ALJ also found that Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In accordance with 20 C.F.R. §§ 404.1545, the ALJ assessed Plaintiff's residual functional capacity ("RFC"),[3] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is limited to simple, routine, and repetitive tasks with occasional interaction with the public and co-workers. The claimant is limited to an environment with only occasional changes in the work setting and no production rate pace, but she is able to perform goal-oriented tasks.

(Tr. 25). The ALJ thus found that Plaintiff was unable to perform any past relevant work as a nurse's aide, cashier or fast food worker (Tr. 29).

The ALJ noted that Plaintiff was born on March 6, 1979, and was thirty years old on the alleged disability onset date thereby classifying her as a younger individual. He also noted that Plaintiff had a high school education and was able to communicate in English (Tr. 29). Considering these factors, as well as the applicable RFC and the VE's assessment, the ALJ concluded that Plaintiff was not disabled at the fifth step of the evaluation process finding that Plaintiff was capable of performing the requirements of the representative occupations of a stock clerk, a private household cleaner, and a janitor, which the VE established existed in significant numbers in the national economy (Tr. 29).

---

[3] A claimant's "residual functional capacity" is what he can do despite the limitations caused by his impairments. Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

**D.     Standard of Review**

In reviewing the administrative determination by the Commissioner, the question before the court is whether there is substantial evidence of record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995), *quoting* Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence has been defined as less than a preponderance of the evidence but more than a mere scintilla. Jesurum, 48 F.3d at 117. Further, the court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002), *citing* Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). "[S]o long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant has the burden of proving the existence of a disability or the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), (5). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A). See Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). As previously discussed, once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the

7

claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A).

### E. Discussion

Plaintiff contends that the Commissioner's determination that she is capable of performing gainful activity is not supported by substantial evidence because the ALJ failed to consider Plaintiff's limitations in dealing with stress in assessing her RFC. Citing to the opinion of Dr. Jan Melcher, Ph.D, the state agency medical consultant, Plaintiff complains that the ALJ erred by rejecting Dr. Melcher's assessment relative to Plaintiff's ability to deal with stress and substituting it with his own opinion. The record, however, is to the contrary. The ALJ not only considered Dr. Melcher's assessment that Plaintiff had limitations dealing with stress but he properly applied that assessment in formulating Plaintiff's RFC.

Dr. Melcher reviewed Plaintiff's records on December 8, 2010, and in assessing Plaintiff's mental RFC found that she was not markedly limited in any category and not significantly limited in twelve of twenty categories (Tr. 254-55). Moreover, Dr. Melcher found Plaintiff only moderately limited in the remaining eight categories: in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to respond appropriately to changes in the work setting; to travel in unfamiliar places; and to set realistic goals or make plans independently of other (Tr. 254-255).

In his narrative clarifying his findings, Dr. Melcher stated that Plaintiff could understand, retain, and follow simple job instructions, *i.e.*, perform one and two step tasks; could make

8

simple decisions; would be able to maintain regular attendance and be punctual; would not require special supervision in order to sustain a work routine; was able to maintain socially appropriate behavior and perform the personal care functions needed to maintain an acceptable level of personal hygiene; can function in production oriented jobs requiring little independent decision making; and that Plaintiff retains the abilities to manage the mental demands of many jobs not requiring complicated tasks (Tr. 256). Dr. Melcher also opined that stress exacerbated Plaintiff's symptoms; that she experienced social anxiety and discomfort around strangers; and evidences some limitations in dealing with work stresses and public contact (Tr. 256). Dr. Melcher, however, concluded that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment (Tr. 256).

Dr. Melcher also completed a psychiatric review technique and concluded that Plaintiff would have mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence or pace; and no limitations with respect to repeated episodes of decompensation of extended duration (Tr. 267).

In assessing Plaintiff's RFC, the ALJ represented that he had considered all of Plaintiff's symptoms and the extent that they can reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. The ALJ then concluded that:

> [Plaintiff] has the residual functional capacity "to perform medium work as defined in 20 CFR 404.1567(c) except that she is limited to simple, routine, and repetitive tasks with occasional interaction with the public and co-workers. [Plaintiff] is limited to an environment with only occasional changes in the work setting with no production rate pace, but she is able to perform goal-oriented tasks.

(Tr. 25). With respect to Dr. Melcher's opinion, the ALJ stated that:

> The undersigned concludes that the opinion of the State Agency mental

> consultant, Jan Melcher, Ph.D. was fully consistent with the medical
> evidence. . . . Dr. Melcher opined that [Plaintiff] can understand, retain, and
> follow simple job instructions, i.e., perform one and two step tasks. . . . Dr.
> Melcher further opined that [Plaintiff] can make simple decisions, maintain
> socially appropriate behavior and can perform personal care functions
> needed to maintain an acceptable level of personal hygiene. . . . Further, she
> is capable of asking simple questions and accepting instruction, is self-
> sufficient, and can function in production-oriented jobs requiring little
> independent decision making. . . . However, [Plaintiff] evidences some
> limitation in dealing with work stresses and public contact. . . . Finally, Dr.
> Melcher opined that [Plaintiff] retains the abilities to manage the mental
> demands of many types of jobs not requiring complicated tasks. . . . Thus,
> the undersigned gave said opinion great weight to the extent it is not
> inconsistent with residual functional capacity indicated above.

(Tr. 28) (citations to record omitted).

Thus, contrary to Plaintiff's assertion, the ALJ not only acknowledged and agreed with Dr. Melcher's findings that Plaintiff had limitations dealing with stress but the ALJ adequately incorporated Plaintiff's limitations into her RFC. Although the ALJ did not expressly state that Plaintiff's stress limitation required a "low stress" work setting, he nevertheless restricted Plaintiff's RFC to simple, routine, repetitive and goal oriented tasks with only occasional interaction with the public and co-workers and to an environment with only occasional changes in the work setting with no production rate pace. See Zelenka v. Colvin, 2013 WL 941823, at *5 (W.D. Pa. Mar. 11, 2013) (finding that the ALJ adequately conveyed Plaintiff's limitations in the hypothetical question to the VE even though he did not specifically use the words "low stress"). Indeed, the United States Court of Appeals for the Third Circuit has found that the term "simple routine tasks" generally refers to the non-exertional or mental aspects of work and typically involves low stress level work that does not require maintaining sustained concentration. Menkes v. Astrue, 262 F. App'x 410, 412 (3d Cir. 2008). See Trauterman v. Colvin, ___ F. Supp. 2d ___, ___, 2014 WL 641544, at *6 (W.D. Pa. 2014) (defining low-stress work environment as "not production rate pace work, but, rather, goal oriented work with only

10

occasional and routine changes in the work setting"); Eckstein v. Comm'r of Soc. Sec., 2014 WL 1371581, at *14 (W.D. Pa. Apr. 8, 2014) (Plaintiff "requires low stress work defined as occasional simple decision-making and occasional changes in the work setting); Willingham v. Astrue, 2010 WL 629839, at *2 (E.D. Pa. Feb. 17, 2010) (low stress work defined as involving only occasional decision making and only occasional changes in the work setting).

Moreover, contrary to Plaintiff's suggestion, Dr. Melcher did not find that Plaintiff had a total "inability to tolerate stress," but found only that her symptoms were exacerbated by stress and that she has "some limitations in dealing with work stressors (Tr. 256). See ECF No. 13, p. 11. More importantly, Dr. Melcher did not find that Plaintiff was unable to work because of stress or that she was otherwise disabled. Rather, Dr. Melcher found that Plaintiff was not markedly limited in any category (Tr. 254-55; 267), and concluded that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment" (Tr. 256). The ALJ's RFC assessment, therefore, is entirely consistent with Dr. Melcher's findings and the other medical evidence of record. It therefore cannot be said that the ALJ either rejected Dr. Melcher's findings or substituted his own opinion for that of Dr. Melcher.[4]

**F.  Conclusion**

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Edelman v. Commissioner of Social Sec., 83 F.3d 68, 70 (3d Cir. 1996). In the instant case, there are no material factual issues in dispute, and it appears that the ALJ's conclusion is supported by substantial evidence. For this reason, it is respectfully recommended that Plaintiff's Motion for

---

[4] It should be noted here that Plaintiff has not pointed to any evidence of record, and the Court has not found any, showing that any health care provider has found that Plaintiff is disabled or that stress in any way precludes her from working.

Summary Judgment, ECF No. 12, be denied, the Commissioner's Motion for Summary Judgment, ECF No. 14, be granted, and the decision of the Commissioner denying Plaintiff's application for DIB be affirmed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

By the Court:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: July 31, 2014

cc: All Counsel of Record Via CM-ECF